

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-11-00896-CR

Deagobeto **OSEGUERA-GARCIA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 226th Judicial District Court, Bexar County, Texas
Trial Court No. 2011CR1453
Honorable Sid L. Harle, Judge Presiding

Opinion by:     Luz Elena D. Chapa, Justice

Sitting:        Karen Angelini, Justice
                Marialyn Barnard, Justice
                Luz Elena D. Chapa, Justice

Delivered and Filed:  May 29, 2013

AFFIRMED

Deagobeto Oseguera-Garcia pled no contest to felony murder pursuant to a plea agreement with the State. The trial court found Oseguera-Garcia guilty and sentenced him to thirty-five years of confinement in the Institutional Division of the Texas Department of Criminal Justice. He appeals the judgment, arguing his plea was not knowing and voluntary and his trial counsel rendered ineffective assistance. We affirm the judgment of the trial court.

**FACTUAL BACKGROUND**

On June 13, 2010, Pedro Garcia was killed by shots fired into the apartment of Ashley Hopper, Oseguera-Garcia's ex-girlfriend. There were no witnesses to the actual shooting and no shell casings recovered from the scene. Witnesses told the police they saw two men running through the apartment complex and leaving in a brown mini-van. Witnesses also told the police there had been previous altercations between Oseguera-Garcia and Hopper. The officers located a brown mini-van matching the description given by witnesses. The owner of the vehicle, Shirley Zapata, gave officers consent to search the vehicle. The officers found a .380 caliber handgun and matching shell casings. Later testing showed the rounds fired into Hopper's apartment were fired from the handgun found in Zapata's mini-van. Zapata and her boyfriend Geovanny Oseguera-Garcia (appellant's brother) gave statements to police. They said they had been with Oseguera-Garcia earlier and had all driven to Hopper's apartment complex. Both told police that Oseguera-Garcia had walked into the complex and later told them he had fired his handgun.

Oseguera-Garcia was subsequently arrested. He told the detective he spoke Spanish and the interview was conducted entirely in Spanish. The detective read Oseguera-Garcia his *Miranda* rights, but Oseguera-Garcia indicated he was having difficulty understanding some of his rights. The detective then read the warnings a second time, one line at a time. Oseguera-Garcia asked numerous questions, which the detective answered. Oseguera-Garcia then stated he understood his rights. He gave a statement in which he admitted he drove to the complex with Zapata and his brother and used a .38 caliber handgun to shoot into the window of Hopper's apartment. He also described placing a black sock over the handgun to collect the shell-casings. The State later indicted Oseguera-Garcia for the murder of Pedro Garcia.

Oseguera-Garcia entered a plea of no contest to the charge of felony murder as part of a plea bargain. The State agreed to drop several counts alleged in the indictment, proceed only on a felony murder charge, and recommend a cap of thirty-five years' confinement with an affirmative finding that a deadly weapon was used. The plea agreement recited there was no application for probation or deferred adjudication.

The trial court accepted Oseguera-Garcia's plea and found him guilty as charged in Count C of the indictment. The court set a punishment hearing for a later date so a pre-sentencing investigation report could be prepared. Two weeks after the plea hearing, Oseguera-Garcia filed pro-se motions to withdraw his plea, for a new trial, and to dismiss his trial counsel. The trial court denied Oseguera-Garcia's request to withdraw his plea and proceeded with a punishment hearing. The court sentenced Oseguera-Garcia to the maximum penalty under the plea agreement—thirty-five years' confinement—and denied his motion for new trial.

**VOLUNTARINESS OF NO CONTEST PLEA**

In his first point of error, Oseguera-Garcia contends the trial court erred in refusing to allow him to withdraw his plea because he did not understand the English language, he was unable to read or understand the written admonishments, and he did not understand the consequences of his plea.

### Standard of Review

We review the trial court's denial of a motion to withdraw a plea for an abuse of discretion. *Parker v. State*, 626 S.W.2d 738, 739–40 (Tex. Crim. App. [Panel Op.] 1982); *Watson v. State*, 974 S.W.2d 763, 765 (Tex. App.—San Antonio 1998, pet. ref'd). A decision by the trial court is arbitrary only if it lies outside the "zone of reasonable disagreement." *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990).

*Discussion*

A trial court must not accept a plea of guilty or no contest unless the court determines the defendant is mentally competent, and has entered the plea freely and voluntarily. TEX. CODE CRIM. PROC. ANN. art. 26.13(b) (West 2011); *see also Pena v. State*, 132 S.W.3d 663, 665 (Tex. App.—Corpus Christi 2004, no pet.). Before accepting a plea, a trial court must admonish a defendant in accordance with article 26.13(a). TEX. CODE CRIM. PROC. ANN. art. 26.13(a); *see also Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006) (noting guilty plea waives three constitutional rights: right to a jury trial; right to confront one's accusers; and right not to incriminate oneself). "[S]ubstantial compliance by the court is sufficient, unless the defendant affirmatively shows that he was not aware of the consequences of his plea and that he was misled or harmed by the admonishment of the court." TEX. CODE CRIM. PROC. ANN. art. 26.13(c); *Aguirre-Mata v. State*, 125 S.W.3d 473, 479–80 (Tex. Crim. App. 2003); *Eatmon v. State*, 768 S.W.2d 310, 312 (Tex. Crim. App. 1989). When the record reveals the trial court complied with the requirements of article 26.13, the burden shifts to the defendant to prove that he did not understand the consequences of his plea and that he was harmed by acceptance of the plea. *Eatmon*, 768 S.W.2d at 312; *Rodriguez v. State*, 933 S.W.2d 702, 706 (Tex. App.—San Antonio 1996, pet. ref'd). A defendant who attests during an initial plea hearing that his plea is voluntary bears a "heavy burden" to later establish that he entered the plea involuntarily. *Houston v. State*, 201 S.W.3d 212, 217 (Tex. App.—Houston [14th Dist.] 2006, no pet). When considering the voluntariness of a plea, an appellate court looks to the record as a whole. *Martinez v. State*, 981 S.W.2d 195, 197 (Tex. Crim. App 1998) (per curiam).

Oseguera-Garcia argues that his inability to understand the English language or the criminal justice system made his plea involuntary. However, the record reflects the trial court

properly admonished Oseguera-Garcia before accepting his no contest plea. The record further reflects that Oseguera-Garcia's court-appointed attorney spoke Spanish and the trial court used an interpreter during all proceedings. Further, the trial court stopped the plea proceedings several times to ensure that Oseguera-Garcia had an opportunity to discuss any questions he had with his lawyer. Oseguera-Garcia's lawyer assured the trial court that neither he nor his co-counsel had any problems communicating with their client. After meeting with his trial counsel, and answering all of the trial court's questions, Oseguera-Garcia stated he understood his rights and he wanted to plead nolo contendere. *See Briones v. State*, 595 S.W.2d 546, 547–48 (Tex. Crim. App. [Panel Op.] 1980).

Additionally, Oseguera-Garcia signed "Admonishments and Stipulations" that contained a judicial confession to the offense as charged in the indictment and stated that Oseguera-Garcia understood and waived his right to a jury trial, his right to remain silent, and his right to confront and cross-examine witnesses against him. The plea agreement also stated Oseguera-Garcia was mentally competent, understood the charges against him, the range of punishment, the consequences of his plea, and his plea and judicial confession were freely and voluntarily made and not influenced by fear, persuasion, or hope of pardon or parole. At the hearing on the motion for new trial, trial counsel testified he and co-counsel spent three hours with Oseguera-Garcia before the plea hearing going over all aspects of the plea agreement and paperwork to make sure he understood it.

The record before this court establishes by prima facie evidence that his plea was entered voluntarily. *See* TEX. CODE CRIM. PROC. ANN. art. 26.13(a); *Rodriguez*, 933 S.W.2d at 705; *Forcha v. State*, 894 S.W.2d 506, 509 (Tex. App.—Houston [1st Dist.] 1995, no pet.) (record showing defendant received admonishments is prima facie showing that plea was knowing and

voluntary). The burden therefore shifted to Oseguera-Garcia to demonstrate his plea was involuntary. *See Rodriguez*, 933 S.W.2d at 706 ("This burden is quite heavy, especially when, as here, the defendant states that he understands the nature of the proceeding, that the allegations are true, and that no outside pressure or influences coerced him into making the plea."). Although Oseguera-Garcia asserts he believed he was entering a plea of not guilty, the record does not support his assertion. Based on the record, Oseguera-Garcia failed to meet his burden to show he entered the plea without understanding the consequences of his action and suffered harm. *See Eatmon*, 768 S.W.2d at 311–12. Based on the entire record, we conclude the record affirmatively shows Oseguera-Garcia entered his plea knowingly and voluntarily. *Aguirre-Mata*, 125 S.W.3d at 475; *Martinez*, 981 S.W.2d at 197. Accordingly, we cannot conclude the trial court abused its discretion in failing to allow Oseguera-Garcia to withdraw his plea. *Parker*, 626 S.W.2d at 740; *Watson*, 974 S.W.2d at 765. We overrule appellant's first point of error.

## INEFFECTIVE ASSISTANCE OF COUNSEL

In Oseguera-Garcia's second and third points of error, he contends his trial counsel rendered ineffective assistance by failing: (1) to challenge his custodial statement and (2) to investigate and present mitigating evidence at the punishment phase.

### *Standard of Review*

We apply the two-prong *Strickland* test to ineffective assistance of counsel claims. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). To obtain relief, Oseguera-Garcia must show his counsel's performance was deficient, and the deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 687. We must look at the totality of his counsel's representation and the particular circumstances of his case to evaluate the effectiveness of his counsel. *Thompson*, 9 S.W.3d at 813. The crux of the issue is whether his counsel's assistance was reasonable under all the

circumstances and prevailing professional norms at the time of the alleged error. *Strickland*, 466 U.S. at 688–89. His counsel is afforded a strong presumption that his conduct fell within the wide range of reasonable professional assistance. *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); *Thompson*, 9 S.W.3d at 813. This presumption is intended to eliminate the distorting effects of hindsight. *Strickland*, 466 U.S. at 689. Therefore to defeat this presumption, the appellant's allegations of ineffectiveness must be firmly founded in the record. *Thompson*, 9 S.W.3d at 813. A substantial risk of failure accompanies an appellant's claim of ineffective assistance of counsel on direct appeal because the record will often be underdeveloped for fair evaluation of the merits of the claim. *Id.*

*Strickland*'s second prong requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial. 466 U.S. at 687. In other words, an appellant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* The ultimate focus of our inquiry must be on the fundamental fairness of the proceeding whose result is being challenged. *Id.* at 697.

### *Applicable Law*

Oseguera-Garcia's contentions again rest on his limited English and difficulty understanding his legal rights. He argues trial counsel failed to challenge his custodial statement and failed to investigate and present mitigating evidence during the punishment phase.

### *Denno Hearing*

A *Denno* hearing is one held to determine whether a statement, typically a confession, made by a defendant was given voluntarily. *See Jackson v. Denno*, 378 U.S. 368 (1964). At the onset, we note the failure to file pre-trial motions is not automatically deemed ineffective assistance because trial counsel may decide not to file pre-trial motions as part of his trial

strategy. *Mares v. State*, 52 S.W.3d 886, 891 (Tex. App.—San Antonio 2009, pet. ref'd). Moreover, the fact that different counsel might have pursued a different trial strategy will not support a finding of ineffective assistance of counsel. *Id.* at 890–91.

At the motion for new trial, Oseguera-Garcia's trial counsel repeatedly testified he believed Oseguera-Garcia voluntarily gave his statement to the officers and he understood his rights at the time of the statement. *See Joseph v. State*, 309 S.W.3d 20, 24–27 (Tex. Crim. App. 2010). The transcription of the interrogation actually indicates Oseguera-Garcia understood the officers, understood his involvement in the crime, and was making his choice voluntarily, knowingly, and intelligently. *Id.*; *see also Leza v. State*, 351 S.W.3d 344, 350 (Tex. Crim. App. 2011). We will not second-guess his counsel's decision not to seek a *Denno* hearing to suppress Oseguera-Garcia's statement. His counsel believed the statement was voluntary and admissible and the record confirms counsel's view of the issue. Counsel cannot be deemed to have performed deficiently for choosing not to seek a *Denno* hearing.

### *Mitigating Evidence*

Oseguera-Garcia next argues that trial counsel failed to investigate or present mitigating testimony because he did not seek witnesses to testify on his behalf, did not call him as a witness to testify about his difficult life in Honduras, and failed to present any meaningful argument on his behalf. Any alleged failure to present mitigating evidence or a witness in the punishment phase is irrelevant absent a showing that any such evidence or witness was available and that the defense would have benefitted from the evidence. *Ex parte Ramirez*, 280 S.W.3d 848, 853 (Tex. Crim. App. 2007).

Oseguera-Garcia's counsel testified that, although his client discussed witnesses who could testify on his behalf, he failed to provide any contact information or have the witnesses call

him. Without any evidence that witnesses were available to testify or what their testimony would have been, we cannot say the witnesses in question would have benefitted Oseguera-Garcia or that his counsel was ineffective for failing to present the same to the trial court. *Ex parte White*, 160 S.W.3d 46, 52 (Tex. Crim. App. 2004); *Rivera v. State*, 123 S.W.3d 21, 32 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) (holding second *Strickland* prong not satisfied where there was no indication that "information was available . . . which would have led to mitigating evidence sufficient to reduce [defendant's] sentence had [counsel] fulfilled his duty").

Moreover, although Oseguera-Garcia now claims to have wanted to testify, the testimony during the motion for new trial is contrary to this assertion. In fact, his trial counsel testified that although he discussed his testimony and the areas in which a judge might be interested, Oseguera-Garcia did not appear to want to testify and made no effort to do so at the trial. The record is simply insufficient to show Oseguera-Garcia asserted his right to testify and his attorney failed to protect it. *See Salinas*, 163 S.W.3d at 741.

Finally, although Oseguera-Garcia argues his counsel failed to make any meaningful argument before the court, his attorney had already negotiated a multi-count indictment down to a plea of nolo contendere for one count of felony murder and secured a punishment cap of thirty-five years, from a possible ninety-nine.

Accordingly, because we cannot conclude that his counsel's conduct fell so outside the bounds of reasonable professional assistance that Oseguera-Garcia was deprived of a fair trial, we overrule his ineffective-assistance claim. *Strickland*, 466 U.S. at 687–89; *Salinas*, 163 S.W.3d at 740; *Thompson*, 9 S.W.3d at 813.

## CONCLUSION

The record reflects the trial court properly admonished Oseguera-Garcia of his rights in accordance with article 26.13 of the Texas Code of Criminal Procedure, and his counsel confirmed Oseguera-Garcia understood his rights and knowingly and voluntarily waived his rights. Additionally, the record reflects his counsel's performance fell within the acceptable range of professional assistance, and Oseguera-Garcia failed to show that the outcome of his case would have been different but for his counsel's allegedly deficient performance.

We affirm the judgment of the trial court.

Luz Elena D. Chapa, Justice

Do Not Publish